UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Kenneth Wilson,                                   Case No. 23-cv-1653 PAM/ECW

        Petitioner,

v.                                                **REPORT AND RECOMMENDATION**

Warden Jared Rardin, Warden;
Collette Peters, BOP Director; and
Merrick Garland, USAG,

        Respondents.

---

This matter is before the Court on Petitioner Kenneth Wilson's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1) ("Petition"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends the Petition be denied.

        **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

**A.**    **Wilson's Conviction and Confinement**

Wilson was convicted in the Northern District of New York of Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Dkt. 8-4 at 3; Dkt. 8 ¶ 17.)[1] He is currently incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). *See* Bureau of

---

[1]     Unless stated otherwise, page citations to the record refer to the CM/ECF pagination.

Prisons ("BOP") Inmate Locator, *available at* https://www.bop.gov/inmateloc/ (last visited April 15, 2024). As of April 3, 2020, Wilson had a current projected release date of December 4, 2027 which reduces to December 4, 2026 when including 365 days of First Step Act ("FSA") time credits. (Dkt. 8 ¶ 17; Dkt. 8-4 at 3.)

**B.     Wilson's Petition for a Writ of Habeas Corpus**

On June 2, 2024, Wilson filed a Petition under 28 U.S.C. § 2241 in this District against Respondent Warden Jared Rardin ("the Warden"), who is the Warden of FMC Rochester; Collette Peters, who is the Director of the BOP; and the United States Attorney General Merrick Garland.[2] (Dkt. 1 at 1.)

Wilson alleges six grounds in the Petition.[3] Ground One is "F.B.O.P. Misinterpretaions of CARES ACT COVID-19 18 USC 3624(c)(2)." (Dkt. 1 at 6.) Wilson states: "Petitioner Appoval for Home Confinement 18 USC 3624(c)(2), Where USPO appoved Address 59 South Broom Street Binghamton NY. Then RRM

---

[2]     As Wilson's custodian, Warden Jared Rardin is the only appropriate respondent in a habeas action under 28 U.S.C. § 2241. *See* 28 U.S.C.A. § 2242 (stating that an application for a writ of habeas corpus shall allege "the name of the person who has custody over" the petitioner); 28 U.S.C.A. § 2243 (stating that a writ or order to show cause "shall be directed to the person having custody of the person detained"); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("In accord with the statutory language and *Wales*' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."). The Court recommends denial of this Petition in its entirety, but in the alternative, the Court would recommend that Collette Peters and Merrick Garland be dismissed from the action independent of the Court's recommendation for dismissal on substantive grounds

[3]     The Court reproduces Wilson's arguments and request for relief as written in the Petition.

2

Pennsylvaina Philadelphia Abuse of Discretion Disaproved F.B.O.P FMC Rochester MN CARES ACT COVID-19 Home Confinement. Based upon a 1990 Case assualt 2d Degree that was Dismissed." (*Id*. at 7.)

Ground Two is "US Probation officer who completed PSI/PSR has reciently April 2023 that Petitioner has no 1990 Crime of Violence to deprived petitioner of Home Confinement." (*Id*.) Wilson continues: "In Response to Petitioner Challenge of inaccurate PSI/PSR Informant. Probation officer agreed that the information should not be used by F.B.O.P to Deny Petitioner of Home Confinement Program Statement 7320.01 CN-2." (*Id*.)

Ground Three is "F.B.O.P. Program Statement Categorization of offense 5162.05 is unconstitutionally vague." (*Id*.) In the section reserved for supporting facts Wilson simply wrote: "18 USC 16(b)." (*Id*.)

Ground Four is "18 USC 3632(d)(4)(4)(ii) Statue no properly interpretated did not properly calculate FSA/FTC non compliance P/S 5410.01 CN-2." (*Id*. at 8.) Wilson continues: "Petitioner should have have getting 15 day every month 18 USC 3632(d)(4)(A)(ii). F.B.O.P owes 360 days of sentence." (*Id*.)

Ground Five is "Respondents abuse of discreation in depriving petitioner of excellerated release based upon an offence that was dismisse for which the defendant is not serving his federal sentence under." (*Id*. at 9.) Wilson continues:

> That in order for the redpondent to deprive this petitioner of Home Confinment CARES-ACT-COVID-19 for a crime of violence the defendant/petitioner has to be serving his federal sentence under a conviction of a crime of violence. Including USSG, PSI/PRS has to impose an enhancement, criminal history point, Catagory Level based upon the crime

3

>of Violence Case having been Dismissed, in which petitioners PSI/PSR, Judgement and commitment Order doesn't reflect. So the Petitioner are abusing their discreation, adversly affecting Petitioners excellerated release.

(*Id.*)

Ground Six is "Accardi Doctrine violations, requring declarotory and injunct-releif." (*Id.*) Wilson continues:

>Respondents non compliances with their own policy as proximate causes of depriving Petitioner of excellerated release Home Confinement CARS-ACT-COVID-19 That requires the Court to declary any form of releif that is propert as is just, not limited to injunction. Including reccomandation to the respondents to Place Petitioner into Home confinement, Find that respondents are powerless to use non relevant and dismissed charges not meeting crime of violence aquitted conduct.

(*Id.*)

In his Petition, Wilson asserts that he appealed the BOP's decision to deny him "release" to home confinement via the CARES Act three times. (Dkt. 1 at 2-4.) He alleges that he filed his first appeal in January 2023 to "FMC Rochester MN," and that the appeal was denied. (*Id.* at 2.) He filed his second appeal in February 2023 to the BOP Regional Director, and that appeal was likewise denied. (*Id.* at 3.) He filed his third and final appeal in March 2023 to the BOP Central Office in Washington D.C. (*Id.*) That appeal was denied. (*Id.*) Wilson attached this final appeal and subsequent denial as an exhibit to his petition. (Dkt. 1-1 at 2-3.) He alleges that he presented Grounds One to Six in all appeals available to him. (Dkt. 1 at 6-9.) However, Wilson's appeal to the BOP Central Office did not challenge the calculation of his FSA time credits. (Dkt. 1-1 at 2-3.)

4

His Petition seeks the following relief: "Court properly interpreate 18 USC 3624(c)(2) CARES ACT COVID-19.  Find No Crime of Violence 1990 assualt 2nd degree Dismisse.  Declare F.B.O.P Abuse of Discretion Denial Home Confinemnt Properly calculate 18 USC 3632(d)(4)(A)(ii)."  (Dkt. 1 at 8.)

## II.   ANALYSIS

### A.   Legal Standard

Wilson seeks relief under 28 U.S.C. § 2241.  (Dkt 1.)  To obtain relief under § 2241, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  If a petitioner "is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy."  *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *see also Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014) (quoting *Kruger*).  Said another way, under binding Eighth Circuit authority, a prisoner may not use a writ of habeas corpus to assert a constitutional claim relating "to the conditions of confinement."[4]  *Spencer*, 774 F.3d at 470; *see also id.* at 470-71 & n.6 (noting a circuit split on this issue but that the Eighth Circuit holds that conditions of confinement claims are not cognizable in a habeas petition).  In such a

---

[4]   The Court also notes that "[i]t is well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement.... Home Confinement is a place of confinement."  *Brown v. Kallis*, No. 21-CV-920 (PJS/ECW), 2022 WL 1652933, at *10 (D. Minn. Apr. 21, 2022), *R. & R. adopted*, 2022 WL 1645666 (D. Minn. May 24, 2022) (quoting *United States v. James*, Case No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. April 21, 2020)).

circumstance, "the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073.

### B.  Challenge to Denial of Home Confinement Under the CARES Act

Wilson's arguments in Grounds One, Two, Three, Five, and Six to relate to the BOP's denial of his transfer to home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), and the Court therefore considers them together. Wilson's argument as to these Grounds is based on his belief that the BOP denied him transfer to CARES Act home confinement based on a 1990 assault charge that had been dismissed and never resulted in a conviction. (*See generally* Dkt. 1 at 6-9.) Wilson argues that the BOP's denial of home confinement for this reason was a misinterpretation of § 3624 and an abuse of discretion. (*See id*.)

As an initial matter, Respondents contend that the BOP did not deny Wilson CARES Act home confinement due to the 1990 assault charge. (Dkt. 7 at 17.) Respondents offer evidence that the BOP denied Wilson CARES Act home confinement "based on its duty to protect the public and law enforcement officers, due to [Wilson's] history of fleeing, eluding, and resisting arrest (which resulted in injury to an officer) and resuming criminal conduct upon release from custody" and "in accordance with the Attorney General's guidance memorandum of April 3, 2020," which expanded the cohort of inmates who could be considered for home confinement due to the Covid-19 pandemic's material effect on BOP operations. (*Id.* (citing Dkt. 8 ¶ 12; Dkt. 8-2 at 2-3); *see also id.* at 5 (describing April 3, 2020 memorandum).)

6

Next, it is necessary to clarify that while Wilson seeks "release" to home confinement, "[h]ome confinement is a place of imprisonment." *Jorgensen v. Birkholz*, , No. 20-CV-2349 (NEB/DTS), 2021 WL 2935641 (D. Minn. July 13, 2021). Indeed, an inmate may be returned to a BOP institution if he violates the terms of home detention. *See* 34 U.S.C. § 60541(g)(2) ("A violation by an eligible. . . offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to the designated Bureau of Prisons institution in which that offender was imprisoned immediately before placement on home detention. . . or to another appropriate Bureau of Prisons institution, as determined by the Bureau of Prisons."). The relief Wilson seeks is more accurately described as a request for placement in home confinement—which is still in BOP custody—not a request for "release" to home confinement. This distinction matters because, as explained below, it precludes the Court's review of the BOP's decisions under § 3624(c) and means the Court does not have jurisdiction to the extent Wilson seeks a home confinement placement.

Indeed, relying on that principle, Respondents argue that the Court lacks jurisdiction to review the BOP's individualized decision regarding Wilson's home confinement placement. (*Id.* at 17.) Respondents contend that the BOP has the exclusive authority to designate an inmate's place of confinement and, moreover, that the Court lacks subject matter jurisdiction over this Petition because Wilson's challenge to the denial of home confinement is not a challenge to the fact or duration of his custody and thus is not cognizable in a habeas petition. (*Id.* at 18-19.)

The Court first addresses its ability to review the BOP's home confinement decision. In three sections of the subchapter on Imprisonment (§§ 3621-3626) in title 18, United States Code, Congress clearly exempted from judicial review the BOP's discretionary placement decisions, including placements to home confinement. First, in § 3621, Congress has provided the BOP with exclusive authority to designate an inmate's place of confinement: "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. . . . Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b).

Second, § 3625 provides that "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code [the Administrative Procedure Act], do not apply to the making of any determination, decision, or order under this subchapter [section 3621-3626]." The Eighth Circuit has confirmed that § 3625 precludes judicial review of adjudicative or discretionary decisions made under the subchapter. *Cf. Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[Section] 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions.").

Third, Wilson challenges the BOP's interpretation of § 3624(c)(2). (Dkt. 1 at 6-9.) But that subsection confirms the BOP's authority as to placement decisions and states in § 3624(c)(4) that, "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4).

In sum, these three sections—§§ 3621, 3624, and 3625—preclude the Court's review of the BOP's decision against transferring Wilson to home confinement under § 3624(c). This means the Court lacks the authority to review BOP's decision denying Wilson a transfer to home confinement under § 3624(c). *See United States v. Houck*, 2 F.4th 1082 (8th Cir. 2021) (finding in compassionate release context that "[b]ecause [§ 3624(c)(2) and the CARES Act] give authority to place a prisoner in home confinement to the Director of the BOP, not the district court, the district court correctly held that it did not have authority to change Houck's place of imprisonment to home confinement under § 3624(c)(2)"); *see also United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *2 (D. Minn. May 14, 2020) (denying motion for release in light of the COVID-19 pandemic because "the BOP has exclusive authority to determine the placement of prisoners . . . Neither the CARES Act nor the FSA alters this authority"). The Court recommends denial of the Petition as to Grounds One, Two, Three, Five, and Six for this reason.

The Court recommends denial as to those Grounds for a second reason: Wilson's request to be "released" to home confinement is not cognizable in a habeas petition because placement in home confinement is not a "release" from custody under the law. This means Wilson's request to be transferred to home confinement relates to his conditions of confinement (the conduction of his custodial location) but does not relate to the length or validity of his sentence. Consequently, Wilson's request for a placement in home confinement is not cognizable in this habeas proceeding, and the Court recommends denial of the Petition as to Grounds One, Two, Three, Five, and Six for this

9

independent reason. *See Jorgensen v. Birkholz*, No. 20-CV-2349 (NEB/DTS), 2021 WL 3476709, at *8 (D. Minn. Feb. 18, 2021) (concluding the court lacked subject matter jurisdiction to consider the petitioners' habeas challenge to the BOP's denial of their transfer to home confinement during the Covid-19 pandemic because the challenge was to conditions of confinement rather than the length or validity of their sentence), *R. & R. adopted sub nom. Jorgensen v. Birkholz*, 2021 WL 2935641 (D. Minn. July 13, 2021).

In sum, the Court recommends denying Grounds One, Two, Three, Five, and Six for lack of subject matter jurisdiction, and alternatively, for lack of authority to consider the claims. The Court therefore does not address Wilson's arguments that his placement request was denied due to the 1990 assault charge, nor does it address Wilson's argument in Ground Three that BOP Program Statement 5162.05 is unconstitutionally vague.

**B.     Challenge Regarding First Step Act Time Credits**

Wilson argues in Ground Four that the BOP improperly interpreted 18 U.S.C. § 3632(d)(4)(A)(ii) and therefore "did not properly calculate FSA/FTC non-compliance." (Dkt. 1 at 8.) Wilson argues that he should have been getting 15 days of FSA time credits (rather than 10 days) every month based on 18 U.S.C. § 3632(d)(4) and that the BOP "owes 360 days of sentence." (*Id*.) Respondents counter that the BOP "properly interpreted § 3632(d)(4)(A)(ii) and accordingly correctly calculated the FTCs Wilson has earned at a rate of 10 days of FTCs every 30 days." (Dkt. at 27.) The Court need not delve into the merits of the parties' respective statutory interpretation arguments, however, because Wilson's request for relief under Ground Four is not cognizable in

10

habeas.  The Court will first summarize the First Step Act and then explain why Ground Four should be denied.

### 1. Background of the FSA

Pursuant to the FSA, the BOP was to provide opportunities for prisoners to participate in evidence-based recidivism reduction ("EBRR")[5] programs and productive activities ("PA"),[6] and "provide incentives and rewards for prisoners" who complete those programs and activities, including "increased phone privileges, additional visitation time, transfer to prisons closer to prisoners' residence upon release, and, for prisoners who complete EB[R]R programs, 'time credits.'"  *Manning v. Kallis*, No. 21-cv-160 (JRT/KMM), 2021 WL 4526653, at *1 (D. Minn. Sept. 9, 2021) (citing 18 U.S.C. §§ 3632(d)(1), (d)(2), (d)(4)).

An inmate's risk of recidivism, for the purposes of receiving credit under § 3632(d)(4), is measured by the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN").[7]  (*See* Program Statement 5400.01, First Step Act Needs Assessment June 25, 2021 (Dkt. 8-6 at 2).)

---

[5]   "An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison."  28 C.F.R. § 523.41(a).

[6]   "A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating."  28 C.F.R. § 523.41(b).

[7]   PATTERN is a component of the BOP's implementation of the FSA, intended to reduce the risk of federal inmates recidivating after release.  *See generally*, 18 U.S.C. §§ 3631-3635; P.S. 5410.01; U.S. Dep't of Justice, *The First Step Act of 2018: Risk and*

Under the FSA, eligible prisoners who "successfully complete[] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation" in such programs or activities; and a prisoner that is determined by the BOP to be "at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation . . ." 18 U.S.C. § 3632(d)(4)(A)(i)(ii) (emphasis added);[8] *see also* 28 C.F.R. § 523.42(c).[9]

---

*Needs Assessment System*, at iv, available at https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (last visited April 15, 2024).

[8]     18 U.S.C. § 3632 (d)(4)(A) states:

(A)     In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

   (i)     A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

   (ii)    A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

[9]     28 C.F.R. § 523.42(c) states:

(1)     For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.

"'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." 28 C.F.R. § 523.41(c)(2).

FSA time credits for inmates that successfully participate in EBRR programs or PAs "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Prelease custody includes being placed in either home confinement or a residential reentry center. 18 U.S.C. § 3624(g)(2)(A)(B). Eligible federal prisoners sentenced to a term of supervised release following their term of imprisonment can earn up to 365 days of FTCs towards their supervised release date. *See* 18 U.S.C. § 3624(g)(3). An inmate may lose FTCs "for violation of the requirements or rules of an EBRR Program or PA" and the inmate may appeal that loss "through the Bureau's Administrative Remedy Program." 28 C.F.R. § 523.43(a)(b).

---

(2)   For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:

  (i)   Is determined by the Bureau to be at a minimum or low risk for recidivating; and

  (ii)  Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

13

### 2. Jurisdiction Over Wilson's FSA Time Credit Challenge

Wilson argues that he should have been getting 15 days of FSA time credits (rather than 10 days) every month based on 18 U.S.C. § 3632(d)(4) and that the BOP "owes 360 days of sentence." (Dkt. 1 at 8.) As to this Ground, Wilson requests relief in the form of a proper calculation under § 3632(d)(4)(A)(ii) and that the Court order his placement in home confinement. (*Id.*)

However, the Court cannot reach the merits of Wilson's claim for three reasons. First, Wilson has not satisfied the exhaustion requirement as to Ground Four. Generally, all federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). Here, Wilson contends that he raised the FSA time credit issue in his appeals, however, it is clear from the appeal and denial submitted with Wilson's Petition that he did not challenge the calculation of his FSA time credits. (Dkt. 1-1 at 2-3.) His failure to exhaust administrative remedies is reason to recommend denial of the Petition as to Ground Four. *See e.g.*, *Streker v. Segal*, No. 23-CV-1522 (KMM/DTS), 2023 WL 5337084, at *1 (D. Minn. June 30, 2023) ("Because Streker has not exhausted her administrative remedies [of her FSA time credits claim], the Court recommends her petition be dismissed without prejudice."), *R. & R. adopted*, 2023 WL 5333811 (D. Minn. Aug. 18, 2023).

Even if Wilson had exhausted his remedies as to Ground Four, the Court still cannot provide him with relief. To the extent Wilson's assertion that the BOP "owes 360

14

days of sentence" means he is seeking application of FSA time credits to supervised release, the record reflects that the BOP has already applied 365 credits to supervised release (Dkt. 8 ¶ 17; Dkt. 8-4 at 3), which is the maximum that can be applied, *see* 18 U.S.C. § 3624(g)(3) (limiting application to 12 months). The United States Constitution limits the jurisdiction of the federal courts to ongoing cases and controversies. *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000); *see* U.S. Const. art. III, § 2. "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Haden*, 212 F.3d at 469 (alteration in original) (quoting *Beck v. Mo. State High Sch. Activities Ass'n,* 18 F.3d 604, 605 (8th Cir. 1994)). Here, to the extent Wilson is asking the Court to apply FSA time credits to his supervised relief, the Court cannot grant effective relief because the BOP has already applied the maximum allowable, and there is nothing left for the Court to do. The Court therefore recommends dismissal of Ground Four to the extent it seeks this type of relief. *See Potter v. Norwest Mortg.*, 329 F.3d 608, 611 (8th Cir. 2003) ("When an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action.").

Second, to the extent Wilson seeks placement in home confinement based on his theory that he has been earning 15 (not 10) days of FSA credits a month, the Court lacks jurisdiction to consider this request. Because Wilson has already earned 365 days of time credits to be applied toward supervised release, any remaining days he has accrued or does accrue (regardless of the rate) would go towards his transfer to a residential re-entry

15

center or home confinement, and not towards a shorter length of confinement. *See* 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(2)(A)(B). Wilson appears to know this, as he only seeks home confinement in his request for relief. (*See* Dkt. 1 at 8.)

However, as discussed above, "[h]ome confinement is a place of imprisonment.," *Jorgensen*, 2021 WL 2935641, and habeas relief is only available when a petitioner challenges "the validity of his conviction or the length of his detention," *Kruger*, 77 F.3d at 1073. Consequently, the Court lacks habeas jurisdiction over Ground Four because a challenge to Wilson's placement is not a challenge to the validity of his conviction or the length of his detention. *See, e.g.*, *Wessels v. Houden*, No. 23-CV-1266 (WMW/ECW), 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (recommending denial of § 2241 petition seeking an immediate transfer to prerelease custody under the First Step Act because "[t]he Court has no habeas jurisdiction in this matter because the only relief that Wessels seeks is a transfer to prerelease custody."), *R. & R. adopted*, 2023 WL 7168926 (D. Minn. Oct. 31, 2023); *Mack v. Segal*, No. 23-CV-1353 (NEB/DLM), 2023 WL 4564377, at *2 (D. Minn. June 2, 2023) ("Accordingly, to the extent that Ms. Mack contends that FSA credits should be applied towards her pre-release custody, such claims do not attack the legality of her detention, only the place of that detention. As such, a writ of habeas corpus is not available as a remedy to correct the alleged violation of Ms. Mack's rights."), *R. & R. adopted*, 2023 WL 4561319 (D. Minn. July 16, 2023).

The Court therefore recommends denial of Ground Four.

\* \* \*

For the reasons stated above, the Court recommends denial of the Petition in its entirety.

## III.   RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1. Petitioner Kenneth Wilson's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**; and

2. That this case be **DISMISSED WITHOUT PREJUDICE**.

DATED: April 15, 2024                              *s/Elizabeth Cowan Wright*
                                                   ELIZABETH COWAN WRIGHT
                                                   United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).